UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 12-10123-RWZ


DONALD BLISS, LYNN BLISS, KATIE BLISS, A.B.,
a minor child through his guardians and next friends Donald Bliss and Lynn Bliss,
and M.B., a minor child through her guardians
and next friends Donald Bliss and Lynn Bliss

v.

JOHN J. SANGUINET, BRUCE SAUVAGEAU, M. JANE DONAHUE,
BRENDA ECKSTROM, JOHN CRONAN, JAMES POTTER,
LISA BINDAS, and TOWN OF WAREHAM


MEMORANDUM OF DECISION

June 24, 2013

ZOBEL, D.J.

Plaintiff Donald Bliss filed this action against the Town of Wareham and several

town officials alleging violations of his federal and state constitutional rights and

various tort claims in connection with his termination from the Wareham Police

Department.  Defendants Bruce Sauvageau, M. Jane Donahue, Brenda Eckstrom, John

Cronan, James Potter, and John Sanguinet seek judgment on the pleadings.  Their

motions (Docket ## 25 and 27) are ALLOWED IN PART and DENIED IN PART.

**I. Background[1]**

    **A. The Parties**

    Bliss began his career as a full-time police officer with the Wareham Police

---

[1] The relevant facts are drawn from plaintiffs' First Amended Complaint ("Compl.") (Docket # 3).

Department ("WPD") in March 1987.  He handled a wide range of responsibilities and received a number of promotions, assignments, and commendations during his time with the WPD.  Prior to the events leading up to his termination in February 2009, he had no disciplinary record.  Bliss's wife Lynn Bliss and their three children, Katie Bliss, A.B., and M.B., are also plaintiffs in this action, but their claims are confined to Counts XII and XIII.

The Town of Wareham ("Town") operates pursuant to a municipal charter, which establishes a Board of Selectmen ("Board") with operational policymaking authority and a Town Administrator who is charged with day-to-day operations of Town affairs, including the appointment, discipline, and removal of civil service employees.  During 2008 and 2009, the membership of the Board consisted of defendants Sauvageu, Donahue, Eckstrom, Cronan, and Potter.  Defendant Sanguinet began serving as the interim Town Administrator in June 2008 and was in that role at the time of Bliss's termination.

### B. Events Leading to Termination

In 2002, Bliss was promoted to the rank of lieutenant over another WPD candidate, Sergeant Eileen Grady, who allegedly bore animosity toward Bliss as a result of his promotion and subsequent involvement in employment-related issues unfavorable to her.  The complaint alleges that Sergeant Grady was friends with members of the 2008-2009 Board, particularly Donahue.  Bliss accuses defendant Board members of using their official positions with the Town to target and take action against him due to their personal relationships and allegiances with Sergeant Grady.

In August 2007, John McAuliffe – not a party to this proceeding – entered into a three-year contract to serve as the Town Administrator.  Soon thereafter, Eckstrom presented McAuliffe with a real estate advertisement that involved Bliss and contained his WPD-issued cellular telephone number.  McAuliffe asked then-WPD Chief Thomas Joyce to look into the matter.  Chief Joyce raised the issue with Bliss, who took the corrective measure of porting his cell phone number to a private account that same day.  Chief Joyce's investigation revealed that approximately five calls relating to real estate had occurred while Bliss was working, amounting to twelve minutes of time.[2] McAuliffe, after reviewing memoranda from Chief Joyce and considering key factors – including the Town's lack of a policy regulating cell phone usage, the lack of cost to the Town occasioned by Bliss's real estate-related cell phone use, and Bliss's lack of prior disciplinary history – decided that the advertisement and phone usage would be addressed through sixteen hours of "punishment duty," i.e., work without compensation. Bliss agreed to the duty and submitted a memorandum to Chief Joyce in August 2008 reflecting that it had been served.  McAuliffe, however, never memorialized the decision on his end.

On June 17, 2008, the Board voted to place McAuliffe on leave less than one year into his contract, citing in part that McAuliffe had failed to act in connection with a Town employee, presumably Bliss, who had used a Town phone for a private business. That same day, the Board voted to hire Steven Torres, an attorney, to inquire into

---

[2] The Town did not incur any additional costs from these calls due to the nature of the Town's cellular telephone plan.

personnel matters, including an investigation of Bliss.  To replace McAuliffe, the Board
installed defendant Sanguinet as interim Town Administrator.  Bliss claims that the
Board kept Sanguinet at an interim status in order "to ensure that he did the Board's
bidding."  Compl. ¶ 42.  Sanguinet, who reopened inquiry into the cell phone issue,
purportedly told Chief Joyce that his job was to "carry out the wishes" of the Board.  Id.
at ¶ 43.  The complaint alleges that although the Town was well aware that Bliss had
already served punishment duty, Sanguinet and the Board chose to press ahead with
seeking to sanction Bliss.

Torres's inquiry expanded beyond the cell phone incident into Bliss's outside
work for Intercity Alarm Company, which sells and installs home security systems.  A
Wareham resident, later identified as defendant Lisa Bindas, told Torres that Bliss had
made at least two sales calls to her home while dressed in his police uniform.  She also
claimed that Bliss had indicated that purchasing an alarm from him would secure better
service from the WPD, which would know the alarms were his.  Following his
investigation, Torres provided the Board with a report in which he found that Bliss:

- "knowingly and intentionally utilized a Town Cell phone for his personal business enterprise in violation of General Laws Chapter 268A"[3];

- "knowingly and intentionally failed to reimburse the Town for the cost of use of the cell phone in proportion to his private business enterprise";

- "knowingly and intentionally engaged in conduct prohibited by General Laws Chapter 268a by . . . participating in a matter as a public official in which a business enterprise (Intercity Alarm) had a financial interest . . . [and] [u]tilizing his official position as a police officer to gain an unfair, competitive and economic advantage";

---

[3] Mass. Gen. Laws ch. 268A pertains to the conduct of public officials and employees.

- "knowingly and intentionally provided information during his investigative interview that was directly contradictory to statements and information obtained in the investigation despite being told that he was required as a condition of his employment to provide complete, accurate and truthful information"; and

- "knowingly and intentionally interfered with and attempted to obstruct an employer investigation."

Docket # 26, Ex. 1.[4]  Torres concluded that the charges above could "constitute a basis for disciplinary action up to and including termination from employment."  Id.

On January 22, 2009, Sanguinet delivered to Chief Joyce, for redelivery to Bliss, a notice of contemplated discipline and notice that Bliss was being placed on administrative leave pending a hearing.  In delivering the letter, Sanguinet allegedly stated that the matter was "out of [his] hands" despite the fact that he was the appointing authority and decision-maker for the disciplinary process.  Compl. ¶ 50.

The hearing was held before Sanguinet on February 5, 2009.  Bliss was present and represented by counsel.  Torres presented the Town's case, but Bindas failed to appear as a witness on the alarm sales issue.  Although Torres's report, containing Bindas's allegations, was not submitted as evidence, Sanguinet later admitted that he did consider the report in making his decision.  Shortly following the hearing, Bliss was terminated.

---

[4] The complaint makes several references to Torres's investigative report, and both Bliss and Sanguinet attached copies of the report as exhibits to their memoranda on this matter.  See Compl. ¶ 53, 64; Docket # 26, Ex. 1; Docket # 28, Ex. A.  When deciding a motion to dismiss or for judgment on the pleadings, the court ordinarily cannot consider any documents not attached to or expressly incorporated into the complaint without converting the motion into one for summary judgment.  Watterson v. Page, 987 F. 2d 1, 3 (1st Cir. 1993).  Exceptions may be made, however, for "documents the authenticity of which are not disputed by the parties; . . . for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."  Id.  See also Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007).  Accordingly, I may properly consider Torres's report.

**C. Post-Termination Appeal and Reinstatement**

Bliss appealed his termination to the Civil Service Commission ("Commission"),

which held a hearing over the course of non-consecutive days in August, September,

and October 2009.  Bindas testified as a witness for the Town, but presented testimony

inconsistent with her prior statements as memorialized in Torres's report.  Bliss refuted

Bindas's allegations and also submitted recordings of several Board meetings in which

Bindas had complained to the Board about the business operation of a neighbor that

resulted in large trucks hauling material up and down her road.  Beginning in November

2007, Bindas repeatedly requested that the Board issue a cease and desist order, but

the Board took no action until May 19, 2009, after Bliss's termination, when it finally

granted her request.  Bliss alleges that the Board granted Bindas's longstanding

request based upon her willingness to concoct false allegations against him.[5]

On May 5, 2011, the Commission reversed Sanguinet's decision and ordered

that Bliss be reinstated to his position as a lieutenant with the WPD with backpay.  In

its decision, the Commission described the Town's treatment of Bliss as "an

unmistakable example of the effect of improper personal motives and undue political

influence which have no place in a merit-based civil service system."  Id. at ¶ 88.  The

Commission also noted that it "has expressed disdain for, and continues to find it telling

of an appointing authority's motives, when there appears to be such unfair 'piling on' of

_____

[5] According to the complaint, Bindas testified before the Commission that she first became involved in the Bliss matter though a conversation with Eckstrom about the situation on her road.  In the course of that discussion, Bindas mentioned that Intercity Alarms had installed her home alarm, at which point Eckstrom asked if Bindas had a business card or phone number for Bliss.

patently marginal charges that lack any reasonable investigatory foundation or evidentiary basis." Id.

### D.  Federal Lawsuit

On January 20, 2012, Bliss and his family commenced this lawsuit against the Town, members of the 2008-2009 Board, Sanguinet, and Bindas.[6]  An amended complaint was filed on January 24, 2012 (Docket # 3).  After filing an answer, the Board members moved for dismissal of all counts against them for failure to state a claim (Docket # 25).[7]  Sanguinet likewise filed an answer and a motion for judgment on the pleadings for failure to state a claim and on the basis of qualified immunity (Docket # 27).  Plaintiffs oppose both motions (Docket ## 26 and 31).

## II. Legal Standard

"The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as that for deciding a Rule 12(b)(6) motion. '[T]he trial court must accept all of the nonmovant's well-pleaded factual averments as true, and draw all reasonable inferences in his favor.'"  Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores, 484 F.3d 1, 22 (1st Cir. 2005) (internal citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[6] All claims against Bindas were dismissed by stipulation of the parties on June 22, 2012 (Docket # 23).

[7] Though styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Board defendants' motion is more appropriately considered as a motion for judgment on the pleadings per Fed. R. Civ. P. 12(c).

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550

U.S. 544, 570 (2007).  The facts pleaded must allow the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged.  Id.  "A pleading that

offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

action will not do.'"  Id.

 "Like Rule 12(b)(6), Rule 12(c) does not allow for any resolution of contested

facts; rather, a court may enter judgment on the pleadings only if the uncontested and

properly considered facts conclusively establish the movant's entitlement to a favorable

judgment."  Aponte-Torres v. University of Puerto Rico, 445 F.3d 50, 54 (1st Cir. 2006).

## III. Discussion

### A. Sufficiency of the Complaint

 I address each count of the First Amended Complaint, and the parties'

arguments thereto, in turn:

### 1. Count I: 42 U.S.C. § 1983 - Procedural Due Process

Bliss claims that Sanguinet and members of the Board violated his right to

procedural due process.  Because he could only be dismissed for just cause pursuant

to Mass. Gen. Laws ch. 31, § 41, Bliss had a protected property interest in his

employment with the WPD.  Board of Regents v. Roth, 408 U.S. 564, 576-78 (1972).

Thus, he could not be discharged without due process, including a hearing before his

termination.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-42 (1985).

Though the hearing "need not be elaborate," the employee is "entitled to oral or written

notice of the charges against him, an explanation of the employer's evidence, and an

opportunity to present his side of the story." Id. at 546.

There is no dispute that Bliss did receive a pre-termination hearing.  Where the parties disagree is whether that hearing was constitutionally adequate.  Bliss contends that his hearing was a sham because the decision to terminate had already been made, as evidenced by Sanguient's prior statements that the matter was "out of [his] hands" and that his job was to "carry out the wishes of the Board."  As a result, Bliss claims, he lacked a meaningful opportunity to be heard.  See Lopez-Anaya v. Palacios-de-Miranda, Civ. 06-2085CCC, 2007 WL 2254501, at *2 (D.P.R. Aug. 6, 2007) ("The hearing must be more than a mere sham: if plaintiff can prove that the decision makers reached their conclusion prior to the hearing and refused to the consider the evidence then due process would not be satisfied."); Ryan v. Illinois Dept. of Children and Family Services, 185 F.3d 751, 762 (7th Cir. 1999) ("Due process requires that, prior to termination, an employee be given the chance to tell [his] side of the story, and that the agency be willing to listen.  Otherwise, the 'opportunity to respond' required by Loudermill is no opportunity at all.").  Whether the hearing was indeed a "sham" is a question of fact not appropriate for resolution at this early stage of the litigation. Lopez-Anaya, 2007 WL 2254501 at *2.  Bliss has made sufficient factual allegations that his termination was pre-ordained by Sanguinet and the Board, and thus his hearing was pro forma and meaningless.  He is therefore entitled to move forward with his procedural due process claim.  Id.

Nonetheless, Sanguinet argues, Bliss cannot maintain his procedural due process claim because Massachusetts law provided him an adequate post-deprivation

remedy.  See Lowe v. Scott, 959 F. 2d 323, 340-41 (1st Cir. 1992) ("[I]f a state provides

adequate post-deprivation remedies – either by statute or through the common-law tort

remedies available in its courts – no claim of a violation of procedural due process can

be brought under § 1983 against the state officials whose random and unauthorized

conduct caused the deprivation.").  Such reasoning, known as the Parratt-Hudson

doctrine, see Parratt v. Taylor, 451 U.S. 527 (1981), and Hudson v. Palmer, 468 U.S.

517 (1984), does not apply here, where the alleged deprivation occurred through the

defendants' abuse of the official authority delegated to them by the State.  See

Zinermon v. Burch, 494 U.S. 113, 138 (1990) (doctrine inapplicable when "[t]he State

delegated to [the state actors] the power and authority to effect the very deprivation

complained of . . . and also . . . the concomitant duty to initiate the procedural

safeguards."); Chmielinski v. Massachusetts, 513 F.3d 309, 315 (1st Cir. 2008).

Notwithstanding the availability of post-deprivation procedures, Bliss was still entitled to

sufficient pre-termination due process.  Cotnoir v. Univ. of Maine Sys., 35 F.3d 6, 12-13

(1st Cir. 1994) ("Where an employee is fired in violation of his due process rights, the

availability of post-termination grievance procedures will not ordinarily cure the

violation.  Thus, even where a discharged employee receives a post-termination

hearing to review adverse personnel action, the pretermination hearing still needs to be

extensive enough

to guard against mistaken decisions, and accordingly, the employee is entitled to

notice, an explanation of the employer's evidence, and an opportunity to present his

side fo the story.") (citations omitted).[8]

Defendants' motions are denied as to Count I.

### 2. Count II: 42 U.S.C. § 1983 - Substantive Due Process

Substantive due process "protects individuals against state actions which are

'arbitrary and capricious,' or those which run counter to 'the concept of ordered liberty,'

or those which, in context, appear 'shocking or violative of universal standards of

decency.'" Amsden v. Moran, 904 F.3d 748, 753-53 (1st Cir. 1990) (internal citations

omitted).  In order to make out a substantive due process claim, Bliss must show that

defendants' acts were so egregious as to shock the conscience and that they deprived

him of a protected interest in life, liberty, and property.  Pagan v. Calderon, 448 F.3d

16, 32 (1st Cir. 2006).

As already noted, Bliss clearly had a protected property interest in continued

employment.  Whether the conduct he alleges is sufficiently conscious-shocking,

however, is a closer question.  The conscious-shocking threshold is high; "[m]ere

violations of state law, even violations resulting from bad faith, do not necessarily

amount to unconstitutional deprivations of substantive due process."  DePoutot v.

Raffaelly, 424 F.3d 112, 119 (1st Cir. 2005).  Rather, the state conduct must be

---

[8] In any event, the complaint also alleges inadequacies with post-deprivation procedures, citing "the delays associated with vindicating one's property interest through appeal to the Civil Service Commission; the limitations on the ability of the Commission to fashion a remedy for an aggrieved employee who has been determined to have been sanctioned wrongfully; and the standard of review applied by the Commission insofar as it affords deference to an appointing authority and thus invites arbitrary, capricious or otherwise impermissible action by an appointing authority who is aware of the delays and limitations on the appellate process."  Compl. ¶ 118.

"extreme and egregious," or "truly outrageous, uncivilized, and intolerable." <u>Pagan</u>, 448 F. 3d at 32 (citations omitted).

The official conduct in this case is arguably less extreme than other examples found in the case law.  <u>See, e.g.</u>, <u>Rochin v. California</u>, 342 U.S. 165, 172 (1952) (obtaining evidence by pumping a defendant's stomach against his will); <u>Limone v. Condon</u>, 372 F.3d 39, 44-45 (1st Cir. 2004) (intentional framing of innocent persons for serious crimes they did not commit); <u>Harrington v. Almy</u>, 977 F.2d 37, 43-44 (1st Cir. 1992) (requiring police officer charged with child abuse to take a highly intrusive physical test of sexual arousal as a condition of reinstatement).  Nevertheless, Bliss's allegations – that town officials unlawfully targeted him for personal and political reasons by, among other things, bringing unfounded charges of misconduct, conspiring with Bindas to concoct false allegations against him, and knowingly terminating him without just cause – paint a highly troubling picture of an abuse of official power.  If such allegations are adequately substantiated by evidence, a reasonable factfinder might conclude that defendants' conduct was so offensive and egregious as to shock the conscience.  The complaint clears the hurdle, albeit barely.  Defendants' motions as to Count II are denied.

### 3. Count III: 42 U.S.C. § 1983 - Equal Protection

Bliss agrees with defendants that his equal protection claim should be dismissed pursuant to <u>Engquist v. Oregon Dept. of Agric.</u>, 553 U.S. 591 (2008).  Count III is dismissed.

### 4. Count IV: 42 U.S.C. § 1983 - <u>Monell</u> Liability

Count IV is brought only against the Town, which has not moved to dismiss any claims.  The Board defendants' motion is denied as to Count IV.

### 5. Count V: Massachusetts Civil Rights Act

To establish a claim under the Massachusetts Civil Rights Act, Bliss must prove that defendants interfered, or attempted to interfere, with his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth by "threats, intimidation or coercion."  M.G.L. c. 12, §§ 11H and 11I; Brown v. Sweeney, 526 F. Supp. 2d 126, 134 (D. Mass. 2007).  "'Threat' in this context involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm . . . 'Intimidation' involves putting in fear for the purpose of compelling or deterring conduct . . . [C]oercion . . . [is] 'the application to another of such force, either physical or moral as to constrain him to do something against his will something he would not otherwise have done.'"  Davis v. Rennie, 264 F.3d 86, 111 (1st Cir. 2001) (quoting Planned Parenthood of Mass., Inc. v. Blake, 631 N.E.2d 985, 990 (Mass. 1994)).  "Threatening, intimidating, or coercive actions directed at third parties should be included in considering any conduct that forms the basis of a claim under the civil rights act."  Haufler v. Zotos, 845 N.E.2d 322, 334 (Mass. 2006).  While "[b]oth threats and intimidations often rely on an element of actual or threatened physical force," coercion "is a broader category that may rely on physical, moral, or economic coercion."  Kennie v. Natural Res. Dep't of Dennis, 889, N.E.2d 936, 944 (Mass. 2008).

Here, the complaint falls short.  None of the conduct alleged could reasonably be characterized as threatening, intimidating, or coercive.  Bliss argues that the Board

defendants used economic coercion against Sanguinet, i.e., "dangled the permanency of the [Town Administrator] position over Sanguinet's head," Compl. ¶ 42, to interfere with Bliss's rights.  Yet the Board was not obligated to hire Sanguinet as a permanent Town Administrator, and its decision to keep him at an interim status is not "coercive." Bliss also claims that Sanguinet's statements to Chief Joyce that he was going to carry out the wishes of the Board and that the Bliss matter was "out of [his] hands," coupled with his actions at the hearing, were "inherently threatening."  Such statements and conduct are far from the kind of objectively threatening behavior that the MCRA requires.

Defendants' motions are allowed as to Count V.

### 6. Count VI: Intentional Interference with Advantageous Relations and Count VIII: Intentional Interference with Prospective Advantageous Relations

Bliss claims defendants tortiously interfered with both his existing employment with the Town and his future opportunities for career advancement.[9]  To prevail on a claim of interference with an advantageous relationship, Bliss must show "(1) a business relationship or contemplated contract of economic benefit; (2) the defendant[s'] knowledge of such relationship; (3) the defendant[s'] intentional and malicious interference with it; [and] (4) [his] loss of advantage directly resulting from defendant[s'] conduct."  Comey v. Hill, 438 N.E.2d 811, 816 (Mass. 1982).

The Board defendants contend that Bliss has not pled any interfering conduct on their part, that the Town cannot interfere with its own contract, and no individual member of the Board was an appointing authority.  These arguments lack merit.  The complaint adequately alleges that the Board defendants unfairly targeted Bliss and took various actions, both individually and collectively, to interfere with his employment with the Town, including conspiring with Bindas to bring false allegations against Bliss and directing Sanguinet to sanction and terminate Bliss without just cause.  It is true that the Town cannot interfere with its own relationship and that the Board lacked the official authority to discipline Bliss, but neither is relevant to the Board defendants' liability for tortious interference.

---

[9] Specifically, the complaint alleges that during the time period between Bliss's termination and reinstatement, Chief Joyce retired and the Town selected and hired a new permanent Chief of Police. Bliss claims that as a senior lieutenant within the WPD at the time of his termination, he would have been interested in pursuing and securing the position of Chief and was deprived of that promotional opportunity by defendants' conduct.

Sanguinet argues that an interference claim cannot be lawfully brought against him since he was Bliss's appointing authority and that there are no allegations of "actual malice" on his part unrelated to the interests of the Town.  Sanguinet is mistaken on both points.  While an employee may not sue his employer for interfering with its own contract, "a supervisor may be personally liable if he tortiously interferes with a subordinate's employment relationship."  Edsall v. Assumption College, 367 F. Supp. 2d 72, 82-83 (D. Mass. 2005).  While Sanguinet had the authority to sanction and terminate Bliss, Bliss's employment relationship was with the Town, not Sanguinet himself.  Moreover, Bliss has sufficiently alleged that Sanguinet acted out of "a spiteful, malignant purpose, unrelated to the legitimate corporate interest of the employer," Weber v. Community Teamwork, Inc., 752 N.E.2d 700, 700 (Mass. 2001) (internal citations omitted), by abdicating his duties as appointing authority in favor of acceding to the improper personal and political interests of the Board, as well as seeking to secure a permanent position for himself.

Defendants' motions are denied as to Count VI.

### 7. Count VII: Covenant of Good Faith and Fair Dealing

A claim for breach of the implied covenant of good faith and fair dealing exists only where there is an enforceable contract between the parties.  Orell v. UMass Mem'l Med. Ctr., Inc., 293 F. Supp. 2d 52, 68 (D. Mass. 2002).  If Bliss had any employment contract or at-will employment relationship, it was with the Town, not Sanguinet or the Board defendants.  Accordingly, none of the individual defendants had a duty of good faith and fair dealing, and Count VII fails.  See Ossinger v. City of Newton, 533 N.E.2d

228, 232 (Mass. App. Ct. 1989); Saltzman v. Town of Hanson, Civ. A. 11-10056-MBB, 2013 WL 1321301, at * 17 (D. Mass. Mar. 31, 2013).

### 8. Count IX: Abuse of Process

To state a claim for abuse of process, a plaintiff must allege facts showing that 1) "process" was used, 2) for an ulterior or illegitimate purpose, 3) resulting in damage. Millennium Equity Holdings, LLC v. Mahlowitz, 925 N.E.2d 513, 522 (Mass. 2010). Massachusetts cases on abuse of process have been limited to three types: writs of attachment, process used to institute a civil action, and process related to the bringing of criminal charges. Jones v. Brockton Public Markets, Inc., 340 N.E.2d 484, 486 (Mass. 1975). The complaint fails to allege that defendants employed any such procedures. Bliss cites to Cignetti v. Healy, 967 F. Supp. 10, 18 (D. Mass. 1997), in arguing that defendants' involvement in the "process" leading up to and resulting in his termination constitutes abuse of process. In Cignetti, the court found that "a reasonable argument can be made that a Civil Service hearing constitutes such 'process'" where the proceeding "compelled the parties to submit to the jurisdiction of the Civil Service Commission, to retain counsel, to provide testimony, and to abide by the decision of the ALJ." Id. While the pre-termination procedures used in this case bear some similarities to the hearing in Cignetti, I find that they ultimately lack sufficient judicial character to qualify as "process." See, e.g., Jones, 340 N.E.2d at 486 (declining to expand definition of process to include injunctions, noting that "in the context of abuse of process, 'process' refers to the papers issued by a court to bring a party or property within its jurisdiction"); Boyle v. Barnstable Police Dep't, 818 F. Supp.

2d 284, 304 (D. Mass. 2011) ("[A]n abuse of process claim requires that the defendants participate in judicial proceedings against the plaintiff").  Count IX is dismissed.

### 9. Count X: Defamation

The Board defendants seek dismissal of Bliss's defamation claim.  However, that claim was brought only against former defendant Bindas, who is no longer a party to the case.  Count X was already dismissed by stipulation.

### 10. Count XI: Civil Conspiracy[10]

There are two versions of civil conspiracy recognized under Massachusetts law. Kurker v. Hill, 689 N.E.2d 833, 836 (Mass. App. Ct. 1998).  The first, an independent tort sometimes known as "true conspiracy," requires a plaintiff to prove that defendants, by "mere force of numbers acting in unison," exercised "some peculiar power of coercion of the plaintiff which an individual standing in a like relation to the plaintiff would not have had." Mass. Labourers' Health & Welfare Fund v. Philip Morris, 62 F. Supp. 2d 236, 244 (D. Mass. 1999) (quoting Fleming v. Dane, 22 N.E.2d 609, 611 (Mass. 1939)).  This cause of action "has most frequently applied to combinations of employers or employees working together in 'concerted refusals to deal.'" Grant v. John Hancock Mut. Life Ins. Co., 183 F. Supp. 2d 344, 362 (D. Mass. 2002).  The second type of conspiracy, deriving from "concerted action," is "more akin to a theory of common law joint liability in tort." Aetna Casualty Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994).  Under that framework, "a defendant may be held liable for

---

[10] The complaint does not state whether this cause of action arises under state common law or under § 1983.  I presume the former based on the arguments made in plaintiffs' briefing in opposition to defendants' motions.

actions done by others pursuant to a common design or with the defendant's substantial assistance or encouragement." Mass. Labourers' Health & Welfare Fund, 62 F. Supp. 2d at 244.

Bliss's allegations are insufficient to make out a claim under the "true conspiracy" theory.  Even presuming that a majority vote of the Board was required take action as a body, the complaint does not explain how defendants exercised coercive power over Bliss through mere force of numbers.[11]  Bliss has, however, sufficiently pled a civil conspiracy under the "concerted action" theory.  The complaint describes "a common plan" among the Board defendants and Sanguinet to "commit a tortious act where the participants know of the plan and its purpose and take affirmative steps to encourage the achievement of the result."  Kurker, 689 N.E.2d at 837 (citation omitted).  Bliss alleges that defendants entered into an agreement to cause harm to him (intentional interference with advantageous relations and intentional infliction of emotional distress, see infra Parts III.A.6 and III.A.11), and acted in furtherance of that agreement: the Board members by pursuing sanctions against Bliss for the cell phone issue despite his completed punishment, conspiring with Bindas to bring false allegations against Bliss, and seeking to have Bliss terminated without just cause; Sanguinet by effectively abdicating his disciplinary authority to the Board and subsequently terminating Bliss.

Defendants' motions are denied as to Count XI.

---

[11] This is particularly true for Sanguinet, who alone had the authority to discipline Bliss.

19

### 11. Count XII: Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress requires: 1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct; 2) that the conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community, 3) that the actions of the defendant were the cause of the plaintiff's distress, and 4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it. See Agis v. Howard Johnson Co., 355 N.E.2d 315, 318-19 (Mass. 1976).

Defendants contend that Bliss has failed to describe any act by them which could qualify as "extreme or outrageous." Bliss in turn insists that the alleged conduct of defendants in unfairly targeting and terminating him showed complete disregard for his rights, caused severe emotional trauma, and "destroyed his life." Compl. ¶ 113. The complaint describes in detail the significant detrimental effect of the termination on his emotional, mental, and physical health. Although Bliss does not state the most compelling case for recovery, these allegations "reasonably could lead the trier of fact to conclude that defendant[s'] conduct was extreme and outrageous, having a severe and traumatic effect upon plaintiff's emotional tranquility." Agis, 355 N.E.2d at 319 (citation omitted). See also id. ("Because reasonable men could differ on these issues, we believe that 'it is for the jury, subject to the control of the court,' to determine whether there should be liability in this case.") (citations omitted); Doe v. Fournier, 851 F. Supp. 2d 207, 225 (D. Mass. 2012), on reconsideration in part (Mar. 20, 2012)

("Where 'reasonable people could differ on whether the conduct is "extreme and outrageous,"' the question should be submitted to the jury and would be improper to decide on a motion to dismiss.") (quoting Boyle v. Wenk, 392 N.E.2d 1053, 1056-67 (Mass. 1979)).

Bliss's emotional distress claim survives, but those of his wife and children do not.  They were neither present for nor the direct objects of defendants' alleged statements or conduct, Nancy P. v. D'Amato, 517 N.E.2d 824, 827 (Mass. 1988) ("the prevailing view among courts is . . . that an absent family member may not recover for severe emotional distress caused by extreme and outrageous conducted directed at another family member"), nor does the complaint establish that they had "both (a) substantially contemporaneous knowledge of the outrageous conduct and (b) a severe emotional response," id. at 828.  Defendants' motions are denied as to Count XII against Bliss, but allowed against Lynn Bliss, Katie Bliss, A.B. and M.B.

### 12. Count XIII: Loss of Consortium

A wife or husband may recover damages for the loss of his or her spouse's consortium, and a child can recover for loss of parental consortium.  Eyssi v. City of Lawrence, 618 N.E.2d 1358, 1360 (Mass. 1993).  However, "a claim for loss of consortium requires proof of a tortious act that caused the claimant's spouse [or parent] personal injury." Sena v. Commowealth, 629 N.E.2d 986, 994 (Mass. 1994).  Because Bliss has sustainable tort claims, the consortium claims of his wife and children are viable.  In contrast, because Lynn Bliss and the Bliss children do not have valid independent tort claims, Bliss's own claim for loss of consortium must be dismissed.

21

### B. Qualified Immunity

Sanguinet asserts that he is entitled to qualified immunity with respect to Bliss's

civil rights claims.  "[G]overnment officials performing discretionary functions generally

are shielded from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would

have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Courts evaluate claims

for qualified immunity under a two-part test: "(1) whether the facts alleged or shown by

the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right

was 'clearly established' at the time of the defendant's alleged violation."  Maldonado v.

Fontanes, 568 F. 3d 263, 269 (1st Cir. 2009).

As already discussed, supra Part III.A.1- 2, Bliss has put forth viable claims for

violation of his procedural and substantive due process rights.  Sanguinet claims that

his actions were objectively reasonable because he relied on both the investigative

report from Attorney Torres and the evidence presented at the hearing in deciding to

terminate Bliss.  This ignores, however, the heart of Bliss's allegations against him: that

the hearing was a sham and Sanguinet's decision was not the result of considering the

evidence, but rather the predetermined product of conspiracy with the Board to target

and harm Bliss.  "The basic requirements of due process have long been settled" and,

especially following Loudermill, "an objectively reasonable official would indubitably

have known that depriving plaintiff of . . . a meaningful opportunity to respond . . .

violated the fourteenth amendment."  Collins v. Marina-Martinez, 894 F.2d 474, 481

(1st Cir. 1990).  Likewise, with respect to substantive due process, a defense of

qualified immunity is "inappropriate in case such as this where the conduct is alleged to be an intentional abuse of official power." <u>Cruz-Erazo v. Rivera Montanez</u>, 212 F.3d 617, 624 (1st Cir. 2000).  Sanguinet's motion to dismiss the civil rights counts on the basis of qualified immunity is denied.

## IV. Conclusion

Defendants' motions (Docket ## 25 and 27) are ALLOWED IN PART and DENIED IN PART.  They are ALLOWED as to Counts III, V, VII, IX, and X, but DENIED as to Counts I, II, IV, VI, VIII, and XI.  With respect to Count XII, defendants' motions are ALLOWED as to claims by Lynn Bliss, Katie Bliss, A.B., and M.B. and DENIED as to the claim by Donald Bliss.  With respect to Count XIII, defendants' motions are ALLOWED as to the claim by Donald Bliss, and DENIED as to the claims by Lynn Bliss, Katie Bliss, A.B., and M.B.

| | |
|---|---|
|      June 24, 2013      |          /s/Rya W. Zobel          |
| DATE | RYA W. ZOBEL |
| | UNITED STATES DISTRICT JUDGE |